IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MENENDEZ CASTILLO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

FRANWIL R. MENENDEZ CASTILLO, APPELLANT.

Filed July 28, 2026.    No. A-25-746.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Shawn Elliott for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and MOORE and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Franwil R. Menendez Castillo appeals his convictions of first degree sexual assault of a child, generation of child pornography, first degree sexual assault, incest, and possession of child pornography, following a jury trial in the district court for Lancaster County. On appeal, Castillo argues that there was insufficient evidence to support his convictions and that he received excessive sentences. Upon our review, we find that there was sufficient evidence to support Castillo's convictions and his sentences were not excessive. Accordingly, we affirm Castillo's convictions and sentences.

## BACKGROUND

On August 12, 2025, the State filed a second amended information charging Castillo with count 1, first degree sexual assault of a child; count 2, generation of child pornography; count 3, first degree sexual assault; count 4, incest; and count 5, possession of child pornography.

- 1 -

Regarding count 1, the second amended information alleged that Castillo, on, about, or between January 1, 2014, and January 10, 2023, did subject U.M., a minor born in January 2007, to sexual penetration when she was under 12 years of age, or when she was at least 12 years of age but less than 16 years of age when Castillo was at least 25 years of age or older. Regarding count 2, the second amended information also alleged that Castillo did (1) knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct which had a child as one of its participants or portrayed observers; or (2) knowingly employ, force, authorize, induce, or otherwise cause a child as one of its participants or portrayed observers; or (3) as a parent, stepparent, legal guardian, or any person with custody and control of a child, knew the content thereof, did consent to such child engaging in any visual depiction of sexually explicit conduct which had a child as one of its participants or portrayed observers.

For count 3, the second amended information claimed that Castillo did subject U.M., on, about, or between January 11, 2023 and April 11, 2024, to sexual penetration without the consent of U.M. or when Castillo knew or should have known that U.M. was mentally or physically incapable of resisting or appraising the nature of her conduct. For count 4, the second amended information also claimed that Castillo did knowingly engage in sexual penetration with U.M., a minor born in January 2007, who fell within the degrees of consanguinity set forth in Neb. Rev. Stat. § 28-702 (Reissue 2016) and was under 18 years of age. Lastly, for count 5, the second amended information alleged that Castillo did knowingly possess any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers.

Castillo filed motions to suppress his statements and other evidence relating to his interview at the police station. The court found that Castillo voluntarily waived his *Miranda* rights, waived the search and seizure of his cell phone, and, pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), freely, voluntarily, and intelligently made statements to Robert Norton, an investigator for the Lincoln Police Department's Special Victims Unit, that were not the product of coercion. Castillo does not challenge this ruling on appeal.

A jury trial was held in August 2025. U.M. testified that she was born in January 2007, and that Castillo is her uncle. U.M. said that Castillo started touching her inappropriately when she was between ages 7 and 10. U.M. disclosed that he touched her private parts over her clothes in her parents' bedroom and eventually started touching her private parts under her clothes. U.M. said that Castillo moved in with her family when she was in fifth grade, and his behavior continued and escalated. U.M. explained that her parents divorced, and Castillo became more attracted to her as she got older and continued to touch her inappropriately.

U.M. said that Castillo eventually married her mother before U.M. entered 6th grade. U.M. testified that Castillo continued to touch her inappropriately and started having penile-vaginal sex with her when she was in middle school. U.M. testified that it would happen in her room and that Castillo would record it on his phone. U.M. stated that Castillo continued to have sex with her into high school and he continued to video it. U.M. said that Castillo told her to stay silent and threatened to make her life miserable if she told anyone about the abuse. U.M. said that she tried to physically fight back sometimes, but Castillo would grab her, throw her down, pull her hair, and force her to have sex with him. U.M. stated at some point Castillo started giving her money and expected sex in return, but that she did not feel like she had a choice, so she took the money anyway.

U.M. testified to an incident where her mother walked in on her and Castillo. U.M. believed this happened when she was in high school, and her mother came home from work unexpectedly. U.M. said she was half dressed and Castillo hid in her closet wearing only a shirt and his boxers. U.M. stated she had to unlock her bedroom door for her mother and told her mother what was happening, but her mother did not believe her, and U.M. continued to be left alone with Castillo.

U.M. testified that she eventually disclosed her abuse to her best friend when she was in high school. U.M. explained that her best friend told her own mother what U.M. had disclosed, who in turn "started venting" to U.M.'s parents about the situation, but U.M.'s mother still did not believe her. U.M. stated she believed that the last sexual encounter she had with Castillo was before or around the holidays in 2023.

In March 2024, U.M. moved in with her older brother Jimmy. U.M. testified that she disclosed the sexual abuse to Jimmy, who got law enforcement involved at that point. U.M. said that an officer came to interview her and she participated in a forensic interview at BraveBe Child Advocacy Center. U.M. stated that she eventually moved back in with her mother right before Halloween after Castillo was arrested and she felt safe to do so. U.M. testified that she saw some of the videos that law enforcement extracted from Castillo's phone. U.M. identified herself and Castillo in the videos. U.M. said that she recognized her belly button ring and said that her mother did not have her belly button pierced.

Gloria M., U.M.'s mother, testified that she was first married to U.M.'s father and then married Castillo. Gloria testified Castillo was born in 1986. Gloria said that Castillo would be left alone with the children sometimes but she did not know that Castillo was abusing U.M. Gloria testified to the incident where she came home from work and saw U.M. and Castillo alone in U.M.'s room together. Gloria said that she did not see anything out of the ordinary and when she asked her daughter about it, her daughter "exploded" and told her to not ask her about this topic again. Gloria said that Castillo was in the closet of U.M.'s bedroom and was fully clothed. Gloria said that after the incident she called U.M.'s father because she was concerned that the behavior was not normal.

Norton, the investigator for the Lincoln Police Department's Special Victims Unit, testified to his involvement in the case. Norton testified that he contacted Castillo over text message to interview him at the police station in September 2024. Norton said that Castillo came to the station, and he conducted an interview of Castillo with another law enforcement officer who served as a Spanish translator for the interview. Norton said that at the time Castillo was not under arrest, but he read Castillo his *Miranda* rights anyway. Norton said that Castillo signed the *Miranda* form and agreed to speak with him and answer all his questions. Norton asked Castillo questions in English, and the translator would translate and then provide Castillo's responses in English.

Norton testified that Castillo admitted that he recorded sexual contact between himself and U.M. on his phone. Norton said that Castillo provided verbal and written consent for Norton to take possession of his phone and for someone at the Lincoln Police Department to download the contents of his phone. Norton discussed how Castillo's phone was transferred to the Electronics Evidence Unit and the contents were digitally downloaded. Norton stated that Castillo's phone contained 30 videos that depicted U.M. and Castillo engaged in sexual contact. Norton said he had personally met with U.M. at that point and was aware of what she looked like and what her voice sounded like.

Norton testified that although U.M. and Castillo's faces were not in all the videos, he was able to find similarities between the female and U.M., including her voice and specific belly button ring. Norton also said that in more than one video Castillo and U.M.'s faces were depicted. Norton explained that he went to Castillo's house to search the residence. Norton testified that he was able to identify certain dressers, bed, and other furniture in the home that was also in the videos. Norton also said that U.M. was shown the videos and she identified herself and her voice in all 30 videos. Norton stated that the majority of the videos were taken when U.M. was 16 years old.

Corey L. Weinmaster, a police investigator for the Lincoln Police Department's Electronic Evidence Unit, testified to his examination of Castillo's cell phone. Weinmaster said he successfully extracted and analyzed data from Castillo's phone, and created a report based on the data collected. Weinmaster stated that the phone had Castillo's email registered to it and contained a photograph of his driver's license. Weinmaster also testified to extracting several videos of what he believed to be child pornography. Weinmaster testified after reviewing the 30 video exhibits before the jury that the videos depicted U.M. and Castillo. Weinmaster testified that he had previously met Castillo and that he recognized Castillo's face in the videos.

The jury found Castillo guilty of all five counts of the amended information: first degree sexual assault of a child, generation of child pornography, first degree sexual assault, incest, and possession of child pornography. The district court accepted the jury's verdict, ordered a presentence investigation report (PSR), and set the matter for sentencing.

At the sentencing hearing, the court indicated it had reviewed the PSR and the victim impact statement. Castillo indicated he discussed the contents of his PSR with his attorney and did not have any additions or corrections. Castillo did not exercise his right to allocution. In imposing sentence, the court stated that it had considered all of the factors required by law. The court opined that Castillo's case was unique as he admitted to sexually assaulting U.M. and making videos of the sexual assault, but also that Castillo did not believe he did anything wrong. The court noted that the presentence investigation officer reported that Castillo had an unwillingness or inability to discuss the current offense, suggesting significant lack of insight into his behavior, and that he refused to acknowledge the victim or consider the impact of his actions.

The district court sentenced Castillo to 30 to 50 years' imprisonment on count 1 (first degree sexual assault of a child), 15 to 20 years on count 2 (generation of child pornography), 15 to 20 years on count 3 (first degree sexual assault), 10 to 20 years on count 4 (incest), and 10 to 20 years on count 5 (possession of child pornography). The court ordered counts 2 and 5 to be served concurrently and counts 3 and 4 to be served concurrently with all other counts to be served consecutively for an aggregate of 60 to 90 years' imprisonment; the court also noted that counts 1 and 2 have mandatory minimum periods of incarceration. The court granted Castillo credit for 367 days already served.

Castillo appeals.

ASSIGNMENTS OF ERROR

Castillo assigns, restated, that the district court erred in (1) finding there was sufficient evidence to convict him of the charges and (2) imposing excessive sentences.

STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *Id.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

ANALYSIS

*Sufficiency of Evidence.*

Castillo assigns that the evidence adduced at trial, even when taken in the light most favorable to the State, was insufficient to support his convictions. Castillo argues that U.M. provided unreliable, contradictory, and inconsistent testimony. Castillo also argues that the State relied upon his "false" confession and that the admissions that Castillo made to the investigator were not true. Castillo claims that the purported evidence of child pornography consisted of cell phone videos that were not clear enough to identify either party or the age of the female party.

Castillo was convicted of first degree sexual assault of a child under Neb. Rev. Stat. § 28-319.01 (Reissue 2016), which provides, in relevant part, that one commits first degree sexual assault of a child if one "subjects another person under twelve years of age to sexual penetration and the actor is at least nineteen years or older." Regarding Castillo's first degree sexual assault conviction, any person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree. Neb. Rev. Stat. § 28-318 (Reissue 2016). Incest is committed when any person engages in sexual penetration with any person who falls within the degrees of consanguinity, which includes uncles and nieces and stepchildren. See Neb. Rev. Stat. §§ 28-702 and 28-703 (Reissue 2016).

At the time the second amended information was filed and trial was held, Neb. Rev. Stat. § 28-1463.03 (Cum. Supp. 2019) stated that "[i]t shall be unlawful for a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct which has a child other than the defendant as one of its participants or portrayed observers" and Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2022) stated that "[i]t shall be unlawful for a person nineteen years of age or older to knowingly possess any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers." At the time of sentencing, the statutes had been changed to Neb. Rev. Stat. § 28-1805 (Cum. Supp. 2025) and Neb. Rev. Stat. § 28-1803 (Cum. Supp. 2025). At the relevant time, "child" was defined as "in the

case of a participant, means any person under the age of eighteen years and, in the case of portrayed observer, means any person under the age of sixteen years" and "sexually explicit conduct" meant "(a) real or simulated intercourse, whether genital-genital, oral-genital, anal-genital, or oral-anal between persons of the same or opposite sex. . . ." Neb. Rev. Stat. § 28-1463.02 (Cum. Supp. 2025).

At trial, the birth dates and familial relationships of U.M. and Castillo were testified to and are without dispute. U.M. testified that Castillo began touching her inappropriately when she was between the ages of 7 and 10, started having sex with her when she was in middle school, and continued to have sex with her until she was 16 years old. U.M. also testified that Castillo would record their sexual contact on his phone and she identified herself in the videos law enforcement showed her from Castillo's phone. U.M.'s testimony alone is sufficient evidence, as the State is not required to corroborate a victim's testimony in cases of first degree sexual assault. See *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022).

Norton also identified U.M. in the videos. Norton said that he recognized U.M.'s voice and the belly button ring that she wore in the videos. Weinmaster also testified to recovering child pornography from Castillo's phone and identified Castillo and U.M. in the videos recovered. Norton said that Castillo admitted to sexual contact with U.M. during their interview. Norton also testified that Castillo admitted recording sexual acts with U.M. on his phone and even showed Norton these videos during the interview. Although Castillo challenges the voluntariness of his confession and claims this was a false confession, the district court overruled his motion to suppress the interview. The court found that Castillo came to the police station voluntarily, waived his *Miranda* rights, and then freely, voluntarily, and intelligently provided statements to Norton. Castillo does not challenge that ruling on appeal.

It is not in the purview of the appellate court to determine the credibility of witnesses on appeal, as such determinations are for the finder of fact. *State v. Duckworth*, 29 Neb. App. 27, 950 N.W.2d 650 (2020). Instead, the appellate court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *Id.*

The evidence presented was sufficient for a rational jury to find that Castillo subjected U.M. to sexual penetration when she was under 12 years of age, that he knowingly made a sexually explicit visual depiction of U.M., and that he subjected her to sexual penetration when she was older than 12 but younger than 16 years of age. The evidence was also sufficient for a rational jury to find that Castillo and U.M. fell within a degree of consanguinity, as he was both identified as her stepfather and uncle, and that he possessed sexually explicit visual depictions of U.M. on his cellphone.

Accordingly, the district court did not err in accepting the jury's verdict as there was sufficient evidence to support all of Castillo's convictions.

*Excessive Sentences.*

Castillo argues that the district court imposed an excessive sentence for each of his convictions. We disagree.

Unless the trial court abused its discretion, an appellate court will not disturb an imposed sentence so long as the sentence is within the prescribed statutory limits. *Id.* An abuse of discretion

occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive the defendant of a substantial right and a just result. *Id.*

The trial court must consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, the nature of the offense, and the amount of violence involved in the commission of the crime. *Id.* Where a sentence imposed within statutory limits is alleged to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the aforementioned factors, as well as any applicable legal principles in determining the sentence to be imposed. *Id.*

Castillo was convicted of five criminal charges: (1) first degree sexual assault of a child, a Class IB felony punishable by a minimum term of 20 years' imprisonment and a maximum term of life imprisonment; (2) generation of child pornography, a Class ID felony punishable by a minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment; (3) first degree sexual assault, a Class II felony punishable by a minimum of 1 year's to a maximum of 50 years' imprisonment; (4) incest, a Class IIA felony punishable by a maximum of 20 years' imprisonment; and (5) possession of child pornography, a Class IIA felony punishable by a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024).

The district court sentenced Castillo to 30 to 50 years' imprisonment for first degree sexual assault of a child, 15 to 20 years' imprisonment for generation of child pornography, 15 to 20 years' imprisonment for first degree sexual assault, 10 to 20 years' imprisonment for incest, and 10 to 20 years' imprisonment for possession of child pornography. The court ordered count 5 (possession of child pornography) to be served concurrent to count 2 (generation of child pornography). The court also ordered count 4 (incest) to be served consecutively to count 3 (first degree sexual assault). Each of the court's imposed sentences were within the relevant statutory requirements for sentencing.

The district court considered all the relevant factors for Castillo's sentencing and utilized the PSR generated for Castillo. The PSR indicated that Castillo scored in the low-risk range on the Vermont Assessment of Sex Offender Risk-2, but that several factors indicated an increased risk for sexual and violent recidivism. Castillo also scored in the moderate risk range on the Sex Offender Treatment Intervention and Progress Scale, which stated there was a need for very considerable improvement in the categories of sexual offense responsibility, sexual attitudes, sexual interest, sexual risk management, state of change, and social influences.

The PSR indicated that Castillo reported that he never watched someone, took photographs, or recorded anyone without their consent despite having generated child pornography using his phone. Castillo also indicated that he did not believe he needed sex offender treatment and responded in disbelief when asked about his thoughts on the victim's feelings. Castillo also said he did not have any idea what got him in trouble and did not know who to blame for what happened. The district court noted that Castillo's lack of understanding and awareness and the depravity of his crime and the effect on others made Castillo a danger to society and a danger to the community unless incarcerated. The court opined that a lesser sentence would depreciate the seriousness of the crimes and would promote disrespect for the law. Based on these statements, the district court clearly considered the relevant factors and the importance of protecting the public in determining his sentence. We find no abuse of discretion.

## CONCLUSION

We find that the evidence was sufficient to support the convictions and that the sentences imposed were not an abuse of discretion. We affirm the judgment of the district court.

AFFIRMED.